UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
VLAD LYUBOVNY p/k/a "DJ VLAD,"

      Plaintiff,

 -against-

WILLIAM LEONARD ROBERTS II p/k/a "RICK ROSS,"

      Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. 7252 (PGG)

## PLAINTIFF'S TRIAL BRIEF

 Plaintiff respectfully submits the following trial brief.

Dated: March 26, 2010

Respectfully submitted,

CAPLAN & ROSS, LLP

By:   S/Jonathan J. Ross
  Brian D. Caplan (BC-1713)
  Jonathan J. Ross (JR 0581)
100 Park Avenue, 18th Floor
New York, New York 10017
Phone: (212) 973-2376
Fax: (212) 661-4290
Email: *bcaplan@caplanross.com*

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

PLAINTIFFS' STATEMENT OF FACTS ....................................................................................1

DISCUSSION OF CONTROLLING LAW ..................................................................................4

EVIDENTIARY ISSUES  ..............................................................................................................6

## PLAINTIFFS' STATEMENT OF FACTS

The material facts are as follows:

A)  Plaintiff is a resident and citizen of the State of New Jersey and maintains his principal place of business in New York City.

B)  Defendant Ross is a resident and citizen of the State of Florida and regularly transacts business within the State of New York.

C)  Plaintiff has been involved in the music industry for over 9 years. Among other things, he has served as a radio disc jockey, produced major television shows, directed motion pictures and has run a Hip-Hop news website.

D)  Over the years, Plaintiff has interviewed numerous music industry performers, producers and record company officials for radio, television, documentaries, and the internet.

E)  Vladtv.com is a Hip-Hop internet news site which was formed in 2006 and has served as a forum for commentary on developments in the music community for over 3 years.

F)  Plaintiff maintains an office in New York City to run Vladtv.com and to interview music industry artists. DJ Vlad conducts 2 to 4 interviews per week at his New York City office; portions of the interviews are placed on the Vladtv.com website weekly.

G)  DJ Vlad has attended numerous music industry functions as a member of the press.

H)  Ross has been a recording artist and performer in the music industry since approximately 2006.

I)  During that time frame, he has released approximately 2 albums on the Slip N Slide label, and one additional album on Def Jam Records, and has sold over 1 million records.

J)  Ross' first album, entitled "Port of Miami" was released in 2006 and sold at least 500,000 copies.

K)  Ross' second album, entitled "Trilla," was released in March 2008 and has sold over 500,000 copies.

L)  Ross' third album, entitled "Deeper Than Rap" was released in early 2009.

M) As part of Ross' public persona, Ross has presented himself in media interviews (TV, radio, magazines, and newspapers) to have been a former drug dealer in order to bolster his "tough guy" image.

N) During 2008, rumors began to circulate that Ross was, in fact, a former correctional officer, which was inconsistent with the persona that Ross had created for himself.

O) In reporting and commentating on these events, from July 2008 onward, DJ Vlad covered the ongoing investigation into Ross' past on Vladtv.com. Among the clips aired on the website was one in which Ross was shown in a correctional officer's uniform. DJ Vlad aired a story about Ross' past on Vladtv.com in July 2008.

P) On August 10, 2008, DJ Vlad was in Houston, Texas in order to attend the Ozone Awards, a music industry function honoring hip hop artists.

Q) DJ Vlad attended the Ozone Awards in his capacity as a journalist and was given a press pass by the event sponsors.

R) Ross was also in Houston, Texas on August 10, 2008 in order to attend the Ozone awards.

S) On August 10, 2008, during the early afternoon, DJ Vlad received a text message that stated as follows: "Niggas will learn…trillaaaa."

T) Ross had been interviewed by DJ Vlad on at least 2 occasions prior to August 10, 2008 and was familiar with DJ Vlad's contact information.

U) DJ Vlad responded to the text message with a text message stating: "Who's this?" as he did not know who had sent the message.

V) Ross, in turn, text messaged DJ Vlad: "Ross..im hearing things."

W) DJ Vlad responded: "What's up?"

X) Following DJ Vlad's second responsive text message, Ross called DJ Vlad and told him, among other things, the following: "I've been hearing things about me on your website," "We gonna make a story," "We going to see each other," "We going to talk," and "Where are you?"

Y) During Ross' conversation with DJ Vlad, Ross learned that both he and DJ Vlad were in Houston to attend the Ozone Awards and Ross told DJ Vlad he would call him and tell him where he wanted to meet. DJ Vlad told Ross that he would be happy to meet him and discuss with him any concerns that Ross had.

2

Z) Later, on that same day, Ross called DJ Vlad and told him where and when to meet him.

AA) Shortly thereafter, on the second floor of the Hilton Hotel in Houston, Texas, DJ Vlad met Ross, who was accompanied by at least 4 people (one his personal manager, two "business associates" of his, and a friend/music collaborator professionally known as "Gunplay") (hereinafter Ross' Associates).

BB) Following a brief conversation between DJ Vlad and Ross in which Ross said, "We got beef," and Ross concluded his conversation with DJ Vlad by saying, "You want something to print? I'll give you something to print."  Ross' Associates then proceeded to strike and beat DJ Vlad in Ross' presence and without any protest on Ross' part.

CC) After the attack one of his attackers stated, "Yeah mother fucker, that's what you get," and another said "print that."  Ross and Ross' Associates then left the scene together, while DJ Vlad lay on the ground bleeding.

DD) Plaintiff sustained numerous injuries as a result of the assault, including 7 stitches near his eye, a fractured eye socket, a fractured nasal passage, a corneal abrasion and sight impairment, fractures in Plaintiff's face, and permanent nerve damage.

## **DISCUSSION OF CONTROLLING LAW**

As a threshold matter, in this diversity action it is New York choice-of-law rules that are employed to determine the substantive law to be applied. Bader v. Purdom, 841 F.2d 38, 39 (2d Cir. 1988). Under New York choice-of-law rules, the substantive law to be applied in a tort action is the law of the state which has the greatest interests in the litigation, with the parties' domiciles and the locus of the tort the primary factors considered. Id. As a general rule, the law of the state where the tort occurred, in this case, Texas, applies, absent special circumstances warranting a departure from the *lex loci delicti* rule, since the jurisdiction in which the incident occurred has the greatest interest in regulating behavior within its borders. Id. at 40; Neumeier v. Kuehner, 31 N.Y.2d 121,128, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454, 458 (NY 1972). Texas law applies to Plaintiff's assault claim. Id.

To establish a claim of civil assault under Texas law, it must be shown that the defendant either intentionally, knowingly, or recklessly caused bodily injury to another; or intentionally or knowingly threatened another with imminent bodily injury or intentionally; or knowingly caused physical contact to another when the person knew or should have reasonably believed that the other would regard the contact as offensive or provocative. Johnson v. Davis, 178 S.W.3d 230, 240 (Tex.App. – Houston [14th Dist.] 2005); Hall v. Sonic Drive-In of Angleton, Inc., 177 S.W.3d 636, 649 (Tex.App. – Houston [1st Dist.] 2005). Plaintiff maintains that the evidence produced at trial will show that Defendant Ross either (i) knowingly, intentionally, or recklessly caused bodily injury to Plaintiff, (ii) intentionally or knowingly threatened Plaintiff with imminent bodily injury, or (iii) intentionally or knowingly caused physical contact to Plaintiff when Defendant knew or should reasonably have believed that Plaintiff would regard the contact as offensive or provocative.

Plaintiff's theory of liability rests on Defendant's conduct in encouraging others, under his command, to physically attack and threaten Plaintiff.  Where one person assists another in making an assault, both are principals and liable in damages for any injury inflicted.  Anyone who commands, directs, advises, encourages, procures, controls, aids or abets a wrongful act by another, is regarded by the law as being just as responsible for the wrongful act as the one who actually committed it.  Stein v. Meachum, 748 S.W.2d 516, 518-519 (Tex.App. – Dallas [__ Dist.] 1988).  While some form of overt participation or some form of encouragement in the commission of the assault is required, *Darden v. E-Z Mart Stores, Inc,* U.S. Dist. Lexis 38724, 4 (2005); *see also, Francis v. Kane*, 246 S.W.2d 279, 281 (1951),  the evidence will show that all of the elements of civil assault are satisfied here.

The other fundamental issues that will arise in the case pertain to damages.  Plaintiff seeks both compensatory and punitive damages.  With respect to the former, Plaintiff is entitled to damages for his past and future physical injuries, medical costs, and pain and suffering.  Punitive or exemplary damages are also recoverable where there is a finding of malice on the part of the defendant.  Valdez v. Church's Fried Chicken, Inc., 683 F. Supp. 596, 610 (W.D.Tex. 1988).  Acts done with gross indifference to the legal rights of others such that they amount to wanton intentional acts without just cause are malicious as a matter of law.  Id. *See also* Texas Civil Practice and Remedies Code, §41.008, §41.003.  The evidence will establish that Defendant Ross acted with sufficient malice towards Plaintiff in carrying out his assault to warrant the harsh penalty of punitive damages.  The jury will be asked to consider Defendant's net worth and to determine an appropriate amount of punitive damages in order to punish Defendant and deter Defendant and others from engaging in such conduct in the future.

## **EVIDENTIARY ISSUES**

Plaintiff has filed two separate motions *in limine* concerning evidentiary issues, and respectfully refers the court to those motions. Briefly, Plaintiff requests an Order excluding the introduction of testimony and other evidence relating to:

(i) the sale of various "mixed tape" compilations of recorded music without the authorization of the recording artists or recording companies who owned the underlying music (the "Mixed Tapes") by Plaintiff or any other previous instance of alleged copyright infringement;

(ii) a prior incident in which Plaintiff used force to repel an attack upon him and allegedly injured his assailant;

(iii) claims or innuendo that Plaintiff is a racist or otherwise bigoted, including but not limited to Plaintiff's use, at any time, of racial or homosexual slurs and of a highly-charged racial word in various song titles contained on the Mixed Tapes;

(iv) whether Plaintiff ever used marijuana or was arrested for driving with a suspended license;

(v) whether Plaintiff posted or approved a posting of a story on his website, Vladtv.com, about Julia Beverly; and

(vi) the fact that Defendant was never charged or convicted of any offense relating to the alleged August 10, 2008 assault.

As set forth in greater detail in the motion, Plaintiff respectfully submits that such evidence is not relevant to the claims asserted in this action and that the prejudice from its introduction would otherwise outweigh any probative value it would have. The motion further argues that evidence concerning Plaintiff's use of racially charged words, prior use of force, past

6

arrests, and marijuana use is also inadmissible character evidence under the Federal Rules of Evidence and has no conceivable bearing on Plaintiff's credibility.

In addition, Plaintiff has moved *in limine* to preclude Defendant from proffering expert witnesses in this action.  As set forth in greater detail in that motion, Plaintiff respectfully maintains that Defendant has not identified or disclosed any expert witnesses to date, is therefore not entitled to call on expert witnesses either in his case-in-chief or as rebuttal witnesses to Plaintiff's disclosed experts.

Additional evidentiary issues may arise during the course of the trial.  Plaintiff reserves the right to raise any such additional evidentiary issues that may arise.

Dated: March 26, 2010	Respectfully submitted,

      S/Jonathan J. Ross
      Brian D. Caplan (BC-1713)
      Jonathan J. Ross (JR 0851)
CAPLAN & ROSS, LLP
100 Park Avenue, 18th Floor
New York, New York 10017
Phone: (212) 973-2376
Fax: (212) 661-4290
Email: *bcaplan@caplanross.com*

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Jonathan J. Ross, hereby certify that on March 26, 2010, I served a true and correct copy of the within Plaintiff's Trial Brief upon the following by email and mail:

>Xavier Donaldson, Esq.
>Donaldson, Chilliest & McDaniel, LLP
>103 East 125th Street, Suite 1102
>New York, NY 10035
>(212) 722-4900
>Attorneys for the Defendant

Dated: March 26, 2010
       New York, New York

                                                                         S/Jonathan J. Ross
                                                                         Jonathan J. Ross