UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VLAD LYUBOVNY p/k/a "DJ VLAD,"

                Plaintiff,

    -against-

WILLIAM LEONARD ROBERTS II p/k/a "RICK ROSS,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. 7252 (PGG)


**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* REGARDING OBJECTING TO INTRODUCTION OF CERTAIN TESTIMONY, DOCUMENTS AND EXHIBITS AT TRIAL**

                              CAPLAN & ROSS, LLP
                              270 Madison Avenue, 13TH Floor
                              New York, New York  10016
                              (212) 973-2376

                              Counsel for Plaintiff

## **PRELIMINARY STATEMENT**

Pursuant to this Court's Order dated March 18, 2010, all motions *in limine* were due by March 26, 2010. Defendant did not serve his motion *in limine* until the end of the day on April 1, 2010. Accordingly, it is respectfully submitted that the Court should simply disregard the merits of the motion and summarily deny it as untimely.

Should the Court consider the motion, however, it should be denied in any event. First, Defendant's eleventh hour request for bifurcation of the punitive damages phase of the trial is based upon nothing more than conclusory generalized claims of prejudice and time-saving, and thus fails to meet his burden to come forward with specific reasons for bifurcation. Furthermore, the evidence to be presented on liability and punitive damages are intertwined. Next, Defendant's conviction for carrying a firearm is relevant and admissible under Federal Rule of Evidence 404(b), as it relates to Defendant's motives for the assault, in that Plaintiff was attacked for challenging the veracity of Defendant's public gangster persona. Finally, the various audio and visual recordings and news articles are all relevant both to explain the reasons and motives behind the brutal assault of Plaintiff, and to support Plaintiff's entitlement to punitive damages in this action.

## STATEMENT OF FACTS

This is an action concerning a brutal attack upon Plaintiff Vlad Lyubovny, professionally known as "DJ Vlad," (hereinafter "DJ Vlad" or "Plaintiff") that was allegedly orchestrated by Defendant William Leonard Roberts II, professionally known as "Rick Ross," (hereinafter "Ross" or "Defendant") with the purpose and intent to obtain retribution for Plaintiff's journalistic reporting about him.  Plaintiff, an established and respected member of the music community, hosts a hip-hop news website, Vladtv.com, which during 2008 commented on the fact that Defendant, contrary to his carefully-crafted public persona as a drug dealer and "gangster," was a former correctional officer.  Plaintiff maintains that Defendant lured Plaintiff to a meeting in Houston, Texas on August 10, 2008, for the purpose of obtaining retribution for those comments.  Plaintiff claims that at the meeting, Defendant through his entourage or posse (consisting of a personal manager, two "business associates," and a friend / fellow rapper named "Gunplay" with whom Defendant had collaborated), acting upon the direction and behest of Defendant, without just cause or provocation, intentionally, willfully, maliciously, and unjustifiably brutally assaulted, battered, and struck Plaintiff about his head and body, causing Plaintiff to suffer serious personal injuries.

**ARGUMENT**

    I.    **Bifurcation**

Pursuant to Federal Rule of Civil Procedure 42(b), the Court, in its discretion, can bifurcate the trial of an action, "for convenience, to avoid prejudice, or to expedite or economize" the trial. Fed. R. Civ. P. 42(b). Bifurcation of the punitive damages phase of the trial is not warranted here.

Courts consider the following factors in determining whether to bifurcate: (1) whether the issues are significantly different from one another; (2) whether the issues are to be tried before a jury or to the court; (3) whether the posture of discovery on the issues favors a single trial or bifurcation; (4) whether the documentary and testimonial evidence on the issues overlap; and (5) whether the party opposing bifurcation will be prejudiced if it is granted. *Dallas v. Goldberg*, 143 F. Supp. 2d 312, 315-316 (S.D.N.Y. 2005). Moreover, the party seeking bifurcation bears the burden of establishing that bifurcation is warranted. *Id.* In this connection, generalized assertions of prejudice are wholly insufficient. Rather, the movant must come forward with a detailed offer of proof in support of bifurcation, *Id.*

Here, Defendant offers no basis for bifurcation of the punitive damages portion of the trial, other than generalized assertions that financial information will somehow affect the jury's liability determination, and a conclusory contention of potential savings of time and resources from separating out the punitive damages phase of the trial. Such generalizations are wholly insufficient, particularly here, where, the parties estimate that the trial will last less than five days in its entirety. There is simply no time savings to be gained from bifurcation. In fact, a separate trial on punitive damages will only increase the trial time with multiple opening and closing statements, jury charges and jury deliberations.

Furthermore, defendant simply ignores that malice is an essential element of the punitive damages claim, and thus much of the evidence that will be presented to support the finding of liability will also be presented to support the claim for punitive damages. For example, Defendant's liability here rests on a finding that he orchestrated and directed the assault of Plaintiff. The same documentary evidence and testimony that will establish his liability will also bear upon his wanton and reckless disregard of Plaintiff's rights. A separate trial on punitive damages would thus entail an almost complete retrial of the liability issues.

The cases cited by Defendant do not lead to any contrary conclusion. In *Campbell v. Keystone Aerial Surveys*, 138 F.3d 996 (5th Cir. 1998), the Fifth Circuit merely mentions in passing that the trial Court had bifurcated the liability and damages phases. There is no discussion as to the rationale or reasons that supported bifurcation in that action, which concerned numerous evidentiary issues and competing expert testimony on theories of liability for an airplane crash. Likewise, *First Texas Savings Corp. v. Reliance Ins. Co.*, 950 F.2d 1171 (5th Cir. 1992), affirms, without any substantive discussion, the trial Court's *refusal* to bifurcate liability and damages phases of the trial in question, simply noting the broad discretion the trial court has in determining whether or not to bifurcate. Finally, the unpublished opinion from the 10th Circuit, *Mandeville v. Quinstar*, 109 Fed. Appx. 191 (10th Cir. 2004), has little bearing here. First, that case did not concern bifurcation of liability and damages phases. Rather, the trial court ordered separate trials on the "clearly separate issues" related to the breach of contract claim and corporate veil issues presented by that action. Here, in contrast, the underlying testimony and documents as to liability and punitive damages are intertwined, and thus bifurcation would lead to duplication of effort.

Accordingly, Defendant's request for bifurcation should be denied.

4

## II. Gun Possession Conviction

While Federal Rule of Evidence 404(b) prohibits the use of "other crimes" evidence to prove character, such evidence may nevertheless be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident…". Fed. R. Evid. 404(b). Here, the fact that Defendant was previously convicted of carrying a firearm relates to, among other things, his motive for seeking retribution upon Plaintiff. The illegal possession of a firearm is consistent with and illustrates Defendant's desired and cultivated gangster persona. When Plaintiff challenged that persona through reporting upon Defendant's prior employment as a correctional officer, Defendant planned, engineered and carried out a brutal assault of Plaintiff. The conviction is thus relevant and admissible for the purpose of establishing Defendant's motive for engineering the assault of Plaintiff.

## III. Audio/Video Interviews, Articles, and Sound Recordings

### The Audio/Video Recordings

Plaintiff incorporates by reference herein its separate submission to the Court of the audio and video recordings Plaintiff intends to introduce at trial with specific details and designations as to each. In brief, Exhibits 1, 2, 3, 5, 5A and 5B are audio and video interviews of Defendant. Plaintiff does not intend to introduce the entirety of these interviews. Rather, Plaintiff intends to introduce those portions in which Defendant denies his past employment as a correctional officer, and that reflect Defendant's knowledge of Plaintiff, and Plaintiff's reporting prior to the incident that occurred on August 10, 2008. Exhibit 17 is a musical track commercially released by Defendant shortly after the commencement of this action. Plaintiff intends to introduce this recording as it refers to the assault and Defendant's malicious intent. Exhibit 18 is a music video

of Defendant performing with the artist professionally known as "Gunplay." Defendant has identified Gunplay as one of the people who participated in the assault. Exhibits 19 and 20 are radio interviews given by Defendant after the incident in which he discusses the August 10, 2008 incident. Finally, Exhibits 35A-C are copies of the three commercial albums released by Defendant. In addition to their relevance on the issue of Defendant's net worth and the proper measure of punitive damages to punish and deter Defendant, Plaintiff intends to play a sampling of recordings from these albums, as further detailed in plaintiff's separate submission to the Court.

### The News Articles

Exhibits 4, 5C, 5D, 5E and 5F are online news articles published in the weeks leading up to the August 10, 2008 incident covering the correctional officer dispute that directly bear on Defendant's motive for assaulting Plaintiff. Exhibit 4 is a July 14, 2008 article in which Defendant is quoted denying he was a correctional officer and confirming his gangster persona; Exhibit 5C is a July 15, 2008 article in which Defendant is quoted denying that he was a correctional officer; Exhibit 5D is an article posted by "The Real Freeway Ricky Ross" (a convicted drug dealer on which Defendant based his stage name "Rick Ross"), which Plaintiff posted on his website VladTV.com, in which Ricky Ross criticizes Defendant; Exhibits 5E and 5F are postings Plaintiff placed on his website VladTV.com, posted on August 4 and 5, 2008, that report on the correctional officer controversy, including the Freeway Ricky Ross article, and parody pictures of Defendant.

While Defendant can deny at the trial having seen these postings on Plaintiff's website, that is a question for the jury to determine. Moreover, Defendant's denial will need to be judged in view of the totality of his testimony, including numerous material, demonstrably false,

statements made by Defendant under oath during his deposition in this action, in which he denied that he ever knew or met Plaintiff prior to the assault, and further denies that he called, spoke with or text messaged Plaintiff prior to the assault.  (*See* Transcript of William Roberts' deposition dated November 18, 2009 at 88:20-92:94; 96:1-99:10; 102:3-102:7; 108:18-113:25).  The evidence at trial, however, will establish beyond doubt, that Defendant lied about each of these matters, and, in fact, called Plaintiff on the day of the assault, and sent text messages to Plaintiff on the day of the assault stating that "we have beef" and "niggas will learn."

Furthermore, Defendant's Counterclaim filed in this action expressly and specifically refers to Plaintiff's website postings and avers that they were published to demean Defendant and damage his "street credence."  *See Counterclaim,* ¶¶ 8-12.  Plaintiff will testify at trial, however, that those postings were immediately removed from his website following the August 10, 2008 assault -- out of fear of further retribution and attacks by Defendant.  Thus, Defendant could have only learned about or viewed those postings prior to the August 10, 2008 incident.

In any event, as noted above, that factual issue is for the jury to decide, and, given Defendants prior false statements under oath, the jury would be well within their discretion to disregard Defendant's trial testimony in its entirety.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that Defendant's motion *in limine* be denied in its entirety.

Dated: April 6, 2010

                              **CAPLAN & ROSS, LLP**

                              By: S/Jonathan J. Ross
                                  Brian D. Caplan (BC 1713)
                                  Jonathan J. Ross (JR 0581)
                              100 Park Avenue, 18th Floor
                              New York, New York 10017
                              (212) 973-2376
                              *Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I, Jonathan J. Ross, hereby certify that on April 6, 2010, I served a true and correct copy of the within Plaintiff's Motion in Limine to Preclude Defendant's Introduction of Certain Testimony and Documents at Trial upon the following by ECF, email and mail:

>Xavier Donaldson, Esq.
>Donaldson, Chilliest & McDaniel, LLP
>103 East 125th Street, Suite 1102
>New York, NY 10035
>(212) 722-4900
>Attorneys for the Defendant

Dated: April 6, 2010
      New York, New York

                                          S/Jonathan J. Ross
                                          Jonathan J. Ross